UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

AUG 1 4 2006

MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| SCOTT Y. WOOD, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2198 |
| | § | |
| PENNTEX RESOURCES, L.P. | § | |
| AND LANCE T. SHANER, | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND TO STAY THIS ACTION**

**FULBRIGHT & JAWORSKI L.L.P.**

J. Todd Shields
Federal I.D. No. 3582
State Bar No. 18260500
1301 McKinney Street, Suite 5100
Houston, Texas  77010-3095
713/651-3762 (telephone)
713/651-5246 (facsimile)

**ATTORNEY-IN-CHARGE FOR
DEFENDANTS AND COUNTER-
CLAIMANTS, PENNTEX RESOURCES,
L.P. AND LANCE T. SHANER**

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING ..................................................................1

STATEMENT OF ISSUES AND STANDARD OF REVIEW ......................................................2

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................................4

ARGUMENT.....................................................................................................................7

I.      WOOD IS BOUND TO ARBITRATE UNDER THE 2005 STOCK
PURCHASE AGREEMENT BECAUSE HE CONSENTED THERETO ............7

II.     WOOD IS BOUND TO ARBITRATE UNDER THE 2005 STOCK
PURCHASE AGREEMENT IRRESPECTIVE OF ANY STATUS HE
MAY HAVE AS A NON-PARTY TO THE AGREEMENT BECAUSE
ORDINARY PRINCIPLES OF CONTRACT AND AGENCY LAW
JUSTIFY BINDING WOOD TO THE ARBITRATION PROVISIONS
OF THE 2005 STOCK PURCHASE AGREEMENT.........................................12

     A.     Introduction ...............................................................................12

     B.     Wood Is Bound To Arbitrate Under The 2005 Stock Purchase
Agreement Because He Has Derived Substantial Direct Benefits
Under The Agreement ...............................................................12

     C.     Wood Is Bound To Arbitrate Under The 2005 Stock Purchase
Agreement Because He Is A Third-Party Beneficiary Under The
Agreement .................................................................................19

     D.     Wood Is Bound To Arbitrate Under The 2005 Stock Purchase
Agreement Because ERG Illinois Holdings, Inc. Bound Wood To
That Agreement As His Agent ...................................................21

     E.     Wood Is Bound To Arbitrate Under The 2005 Stock Purchase
Agreement Because Wood Is The Alter Ego Of ERG Illinois
Holdings, Inc. And Is Attempting To Use Its Corporate Form To
Perpetrate A Fraud....................................................................22

CONCLUSION ...............................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alpine Ocean Seismic Survey, Inc. v. F.W. Myers & Co.*, 23 F.3d 946................................19

*America Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349..........................18

*Amkor Technology, Inc. v. Alcatel Business System*, 278 F.Supp.2d 519..........................18

*Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347................................17, 20

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060................................18

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938........................................3

*Instone Travel Technology Marine & Offshore v. International Shipping
Partners, Inc.*, 334 F.3d 423................................................................9, 10

*International Demographics, Inc. v. SF Newspaper Co.*, 2006 WL 1897042.................17

*Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F.Supp.2d 1045..............18

## STATE CASES

*American Petrofina Company of Texas v. Bryan*, 519 S.W.2d 484..........................7, 8, 9

*Archer v. Griffith*, 390 S.W.2d 735........................................................23

*Biggs v. United States Fire Insurance Co.*, 611 S.W.2d 624......................................21, 22

*Castleberry v. Branscum*, 721 S.W.2d 270................................................23

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
960 S.W.2d 41................................................................................23

*Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655..............................................8

*In re FirstMerit Bank*, 52 S.W.3d 749........................................................18

*In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732......................................12, 19, 21, 22

*In re Rangel*, 45 S.W.3d 783................................................................19

*In re Weekley Homes*, 180 S.W.3d 1273,....................................3, 13, 16, 17, 22

## TABLE OF AUTHORITIES
### (Continued)

*MCI Telecommunications Corp. v. Texas Utilities Electrical Co.*,
   995 S.W.2d 647 ........................................................................................................... 19

*Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518 ......................................................... 19

*Stonewall Insurance Co. v. Modern Exploration Inc.*, 757 S.W.2d 432 ........................... 19

## FEDERAL STATUTES

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq* ..................................................................... 3

## STATE STATUTES

Tex. Bus. Org. Code § 21.223 ............................................................................................ 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SCOTT Y. WOOD,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-06-2198** |
| | § | |
| **PENNTEX RESOURCES, L.P.** | § | |
| **AND LANCE T. SHANER,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION TO COMPEL ARBITRATION
### AND TO STAY THIS ACTION

PennTex Resources, L.P. and Lance T. Shaner, defendants and counterclaimants herein, file Defendants' Memorandum In Support Of Defendants' Motion To Compel Arbitration And To Stay This Action ("Defendants' Memorandum"), and for same would respectfully show the following:

### NATURE AND STAGE OF THE PROCEEDING

This is a diversity action in which the plaintiff, Scott Y. Wood ("Wood"), seeks a declaratory judgment that he cannot be compelled to participate in an arbitration proceeding in which the defendants and counterclaimants, PennTex Resources, L.P. and Lance T. Shaner, seek an award compelling Wood to comply with his obligation under a stock purchase agreement to dismiss or release claims that Wood is now prosecuting in a pending state court action. Wood's complaint herein also asks the Court, in the event that Wood is held to be bound to arbitrate, to declare that arbitration of the claim asserted against him in the arbitration proceeding is premature because the defendants and counterclaimants have allegedly failed to comply with certain conditions precedent to the requested arbitration that are created by the provisions of the

311713181

stock purchase agreement.    The defendants and counterclaimants have answered Wood's complaint by denying his allegations and asserting various affirmative defenses thereto, and have filed a counterclaim seeking an order compelling Wood to proceed to arbitration under the stock purchase agreement.

The parties filed a stipulation herein on August 2, 2006, establishing a briefing schedule with respect to defendants' and counterclaimants' motion to compel arbitration, and jointly requesting that the Court determine the arbitrability issues raised by the motion pursuant to summary proceedings without a jury.  On August 7, 2006, the Court signed an order scheduling a hearing for oral arguments on motions relating to arbitrability issues.   On August 14, 2006, defendants and counterclaimants filed Defendants' Motion To Compel Arbitration And To Stay This Action ("Defendants' Motion") supported by this memorandum and an appendix of supporting materials.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

The issue presented is whether Wood should be ordered to proceed to arbitration with respect to defendants' and counterclaimants' claim against him seeking an award compelling Wood to comply with his obligation under a stock purchase agreement to dismiss or release claims he is now prosecuting in a pending state court action notwithstanding that Wood is not a designated party to the stock purchase agreement and ostensibly signed it only in representative capacities.[1]

The issue presented is one of arbitrability, and is one that this Court has the primary power to determine both pursuant to its inherent powers and pursuant to the explicit provisions

---

[1] See true and correct copy of excerpts from the Stock Purchase Agreement By And Among PennTex Resources, L.P., PennTex Energy Inc., ERG Illinois Holdings, Inc. And ERG Illinois, Inc. Dated: January 12, 2005 (the "2005 Stock Purchase Agreement" or the "Agreement"), which are filed as  Exhibit A in Defendants' Appendix Of Supporting Materials Filed In Support Of Defendants' Motion To Compel Arbitration And To Stay This Action ("Defendants' Appendix").

of the Federal Arbitration Act. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946-947 (1995); and Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. The applicable standard of review is one that will require the Court to make an independent determination based on its resolution of all legal and factual issues as well as its exercise of discretion in accordance with applicable equitable principles. *See* Stipulation Relating To Summary Proceedings Regarding Arbitrability Issues filed herein on August 2, 2006 (stipulating that "the FAA applies to the disputes between the parties relating to . . . arbitrability," and requesting that the Court determine the arbitrability issues on a summary basis without a jury); and *In Re Weekley Homes, L.P.*, 180 S.W.3d 127, 134-135 (Tex. 2005) (stating that "the equitable nature of the doctrine [of direct benefits estoppel] may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case").

The governing law that the Court must apply in resolving this arbitrability issue is the law of the State of Texas. *See In Re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) ("[g]enerally under the FAA, state law governs whether a litigant agreed to arbitrate, and federal law governs the scope of an arbitration clause").[2]

---

[2] Here, it is undisputed that the claims asserted by the defendants and counterclaimants seeking specific performance of Wood's "release obligation" under the 2005 Stock Purchase Agreement are within the scope of the Agreement's arbitration provision, which covers "[a]ll disputes arising under" the Agreement. *See* 2005 Stock Purchase Agreement at Section 11.6(a); Defendants' Appendix, Exhibit A at p. 33. As a consequence, the arbitrability issue in this action is confined to whether Wood has agreed to arbitrate under the 2005 Stock Purchase Agreement, or can be deemed to have done so under any of the various theories that utilize ordinary principles of contract and agency law to bind non-signatory parties to an agreement to arbitrate. As noted above, under the Federal Arbitration Act this issue is generally treated as being one that is governed by state law, and in this instance, the applicable state law is most assuredly the law of the State of Texas. This follows for two reasons. First, in this diversity action the Court would presumptively apply Texas law unless the conflicts of laws principles applied in Texas would suggest that the substantive law of some other state were more appropriate, which they do not. Second, the 2005 Stock Purchase Agreement stipulates that it will be "governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice of law principles." *See* 2005 Stock Purchase Agreement at Section 11.10; Defendants' Appendix, Exhibit A at p. 35.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This action arises out of a dispute regarding the proper construction of the indemnity provisions of a stock purchase agreement that was executed on January 12, 2005, in connection with the sale of the stock of ERG Illinois, Inc. (the "2005 Stock Purchase Agreement" or the "Agreement"). The defendants and counterclaimants herein, PennTex Resources, L.P. ("PennTex") and Lance T. Shaner ("Shaner"), are the "Buyer" and assignee of the "Buyer," respectively, under the 2005 Stock Purchase Agreement.[3] The plaintiff and counterdefendant herein, Scott Y. Wood, is the President and sole shareholder of ERG Illinois Holdings, Inc. ("ERG Holdings"), the "Seller" under the 2005 Stock Purchase Agreement, and President of ERG Illinois, Inc., the "Company" that was sold pursuant to the Agreement.[4]

The dispute giving rise to this litigation focuses on whether Scott Y. Wood is obligated to comply with a "release obligation" that is an integral part of the comprehensive indemnity provisions of the 2005 Stock Purchase Agreement that deal with certain state court litigation that is referred to in the Agreement as the "Tsar Case."[5] Insofar as is relevant to the motion that is

---

[3] *See* 2005 Stock Purchase Agreement at preamble; Defendants' Appendix, Exhibit A at p. 1; and Affidavit Of J. Todd Shields ("Shields Affidavit") at ¶ 4, which is filed as Exhibit F in Defendants' Appendix.

[4] *See* 2005 Stock Purchase Agreement at preamble and signature page, Defendants' Appendix, Exhibit A at pp. 1 and 37; and excerpts from the deposition of Scott Y. Wood taken December 9, 2004 ("Wood Deposition") at p. 38, true and correct copies of which are filed as Exhibit G in Defendants' Appendix.

[5] The "Tsar Case," as defined in Section 9.4 of the 2005 Stock Purchase Agreement, encompasses two separate state court actions (the "Severed Action" and the "Non-Severed Action") that arise out of dealings between ERG Illinois, Inc. ("ERG"), Scott Y. Wood ("Wood"), Tsar Energy II, LLC ("Tsar") and Richard M. Cheatham ("Cheatham") relating to certain oil-producing properties located in the Illinois Basin (the "Illinois And Indiana Properties"). The original dispute between the parties that precipitated the state court litigation concerned whether ERG, as operator, was authorized to charge to the joint account for the Illinois And Indiana Properties fixed monthly overhead of $300.00 with respect to each of the producing wells located in the North Lawrence Unit area of the jointly-owned properties. That dispute has been preliminarily resolved in ERG's favor pursuant to ERG's motion for summary judgment, and is now on appeal to the Court of Appeals For The First District Of Texas from a final judgment signed in the Severed Action. The Non-Severed Action, which is still pending, but has been stayed pending the outcome of this case, was filed on July 29, 2004, by ERG and its then sole shareholder, Scott Y. Wood, against Tsar and its principal member, Cheatham. As the Non-Severed Action is presently constituted, ERG, although denominated as one of the plaintiffs, is asserting no affirmative claims therein, but is a counterdefendant with respect to multiple tort claims that Tsar has asserted that arise out of Tsar's acquisition from ERG in March 2004 of

---

31171318.1                                                    4

the subject of this memorandum, these indemnity provisions, which are set out in Section 9.4 of the Agreement, require PennTex, as the Buyer, to assume the financial costs and liability associated with prosecution and defense of the Tsar Case, and to post a one million dollar letter of credit to secure its performance of such indemnity provisions.[6]  In return, and provided that the Buyer is in compliance with its indemnity obligations under Section 9.4, the Buyer is stipulated as having "full control of the representation of Seller Parties and Scott Y. Wood in the Tsar Case effective as of the Closing," and it is further stipulated that "Scott Y. Wood and the other Buyer Indemnified Parties shall give their full cooperation to the Buyer in the Buyer's post-Closing prosecution and defense of the Tsar Case and Scott Y. Wood will, at Buyer's request and upon being furnished a full and complete release of all matters in the Tsar Case, either dismiss or release the claims that he has asserted individually in the Tsar Case."[7]

On June 21, 2006, PennTex and Shaner commenced an arbitration proceeding against ERG Holdings and Scott Y. Wood seeking specific performance of Wood's "release obligation" under the 2005 Stock Purchase Agreement.[8]  On June 30, 2006, Scott Y. Wood filed this diversity action seeking a declaratory judgment that he cannot be compelled to participate in the arbitration proceeding, and that he is not bound by any determinations that may be made in that

---

its working interest in the Illinois And Indiana Properties, as well as ERG's subsequent action as operator of the Illinois And Indiana Properties in withholding $100,000.00 from a monthly distribution to Tsar of its share of the production revenues from the Illinois And Indiana Properties.  Tsar has also asserted that ERG's action in withholding these production revenues constitutes a breach of both a joint operating agreement and a verbal agreement.  *See* Shields Affidavit at ¶ 5 (verifying the accuracy of the foregoing summary of the "Tsar Case"); Defendants' Appendix, Exhibit F at ¶ 5.

[6] *See* 2005 Stock Purchase Agreement at Sections 9.4 (a) through (d); Defendants' Appendix, Exhibit A at pp. 28-29.

[7] See 2005 Stock Purchase Agreement at Section 9.4(e); Defendants' Appendix, Exhibit A at p. 29.

[8] *See* Shields Affidavit at ¶ 6; Defendants' Appendix, Exhibit F at ¶ 6.

proceeding.[9]  On July 3, 2006, Wood's wholly-owned company, ERG Holdings, filed a motion

to stay the arbitration proceeding pending a final ruling herein on its request for declaratory

relief.[10]   On July 17, 2006, the parties to the pending arbitration proceeding filed a stipulation

therein agreeing that the proceeding should be stayed pending this Court's signing of a ruling on

arbitrability issues in this action.[11]   On August 1, 2006, PennTex and Shaner responded to

Wood's complaint herein by filing an answer and counterclaim asserting that this action should

be stayed, and that Wood should be compelled to proceed to arbitration in the pending arbitration

proceeding.

Against this background, resolution of this case turns on the Court's determination of a

single legal issue, namely, whether notwithstanding that Scott Wood is not a designated party to

the 2005 Stock Purchase Agreement, he can nevertheless be compelled to arbitrate the claims

that PennTex and Shaner have asserted against him seeking specific performance of his "release

obligation" set out in Section 9.4(e) of the 2005 Stock Purchase Agreement.

As the discussion that follows will demonstrate, Scott Wood should be compelled to

participate in the pending arbitration proceeding because, under the unique facts of this case,

Wood is individually liable for performance of his "release obligation" under the 2005 Stock

Purchase Agreement, and because, under ordinary principles of contract and agency law, four

---

[9] *See* Complaint filed herein on June 30, 2006, at ¶ 16.  For the sake of convenience, a copy of the Complaint, without exhibits, is filed as Exhibit K in Defendants' Appendix.  As previously noted, "Wood's Complaint herein also asks the Court, in the event that Wood is held to be bound to arbitrate, to declare that arbitration of the claim asserted against him in the arbitration proceeding is premature because the defendants and counterclaimants have allegedly failed to comply with certain conditions precedent to the requested arbitration that are created by the provisions of the stock purchase agreement." Defendants' Memorandum, *supra,* at pp. 1-2.  However, because resolution of any issues relating to the alleged "prematurity" of arbitration of the claim asserted against Wood in the arbitration proceeding requires consideration of the merits of that claim, this aspect of the relief sought in Wood's Complaint is unrelated to arbitrability issues, and will not be addressed herein.

[10] *See* Shields Affidavit at ¶ 6; Defendants' Appendix, Exhibit F at ¶ 6.

[11] *See id.*

separate theories recognized under Texas law justify binding Wood to arbitrate under the 2005 Stock Purchase Agreement irrespective of any status he may have as a non-designated party to the Agreement.

## ARGUMENT

**I.     WOOD IS BOUND TO ARBITRATE UNDER THE 2005 STOCK PURCHASE AGREEMENT BECAUSE HE CONSENTED THERETO.**

Scott Wood is personally bound to arbitrate under the 2005 Stock Purchase Agreement because the terms of the Agreement, taken as a whole, unambiguously manifest his consent to be bound by the Agreement, and confirm that he signed the Agreement in both his individual and representative capacities.  Wood's argument that the form in which he signed the Agreement, *i.e.*, as "President" of both the Seller, ERG Illinois Holdings, Inc., and the "Company" sold, ERG Illinois, Inc., immunizes him from individual liability for performance of the personal obligations that he assumed, in his own name, in Section 9.4(e) of the Agreement must be rejected because acceptance of that argument would totally nullify a crucial portion of the comprehensive and reciprocal indemnity scheme that is established under Section 9.4 of the 2005 Stock Purchase Agreement, and cannot be squared with the settled rule in Texas that an agent for a disclosed principal may become individually liable under a contract if the agent has substituted his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal.

An illustrative decision is *American Petrofina Company of Texas v. Bryan*, 519 S.W.2d 484 (Tex. App. – El Paso 1975, no writ).  In *American Petrofina*, a guaranty agreement covering the obligations of a corporation owned by two individuals (the Bryan brothers) stated in its text that "I shall be liable and responsible for and shall pay to you all sums that may be due or become due by the Principal promptly upon demand," but was signed by the individuals with the

corporate titles of "Pres." and "Sect.," respectively, following their signatures. *Id.* at 486-487. The trial court, based on a jury finding that the individuals had signed the guaranty agreement solely in corporate capacities, entered a take-nothing judgment on American Petrofina's breach of contract claims against the individuals. *Id.* at 487. However, on appeal, the court of appeals reversed on grounds that, as a matter of law, the guaranty agreement unambiguously established the individual liability of the Bryan brothers, and "[t]he designations after the signatures are only descriptio personae," and "do not destroy the effect of the undertaking and defeat the expressed terms of this guaranty." *Id* at 487.[12]

In reaching its decision, the court in *American Petrofina* applied two principles of Texas law that apply with equal force to this case. Specifically, the court noted that in order to construe the guaranty obligation in question as not being an individual obligation of the Bryan brothers, the court would "have to hold that it is not an obligation at all, and we would utterly destroy its effect." *Id.* The court declined to take such an approach because it would be contrary to "[t]he settled rule . . . that some effect, if possible, is to be given to the writing and a construction which would destroy it is not to be adopted if avoidable." *Id.* Moreover, the Bryan brothers' argument to the effect that the form of their execution of the agreement established that they were signing it only as the agents of their corporation was rejected given that Texas law recognizes that "[t]he fact that a person is under an agency relation to another which is disclosed does not prevent him from becoming personally liable where the terms of the contract clearly establish the personal obligation." *Id.*

---

[12] The Court's reference to the Bryan brothers having placed their respective corporate titles after their signatures as being only "descriptio personae" of their corporate titles, and not determinative of whether they had individual liability under the guaranty agreement, 519 S.W.2d at 487, is consistent with the approach taken by the Texas case law, which generally does not treat the manner of execution of an agreement as being determinative of any question of individual liability arising thereunder. *See, e.g., Gulf & Basco Co. v. Buchanan,* 707 S.W.2d 655, 657 (Tex. App. – Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("A survey of authorities treating the manner of execution of agreements indicates that there is no clear mode of signature that will absolutely fix or avoid personal liability.").

Here, as in *American Petrofina*, Wood asks the Court to construe the 2005 Stock Purchase Agreement in a manner that would "defeat the expressed terms" of his release obligation in Section 9.4(e) of the Agreement, and would "utterly destroy its effect," 519 S.W.2d at 487, thereby seeking to ignore the canon of contract construction, relied on in *American Petrofina*, that mandates construing a contract so as to give effect to all of its provisions.[13] Similarly, here, as in *American Petrofina*, Wood asks the Court to treat his manner of execution of the 2005 Stock Purchase Agreement as nullifying and destroying the effect of his substantive release obligation set out in Section 9.4(e) of the Agreement, thereby seeking to ignore the principle of Texas law, applied in *American Petrofina*, that mandates that a court must look to the whole contract and give effect to its written expression of intent when determining whether an agent-signatory has manifested an intent to substitute his own individual responsibility for that of his principal.

The decision of the Fifth Circuit in *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423 (5th Cir. 2003), which applied Texas law in a factual situation that is analogous to the one present here, is also instructive. In *Instone,* an airline ticket supplier (Instone) brought suit to recover payment for tickets it had provided to International Shipping Partners, Inc. ("ISP") pursuant to a contract between the parties. *Id.* at 425-27. ISP, which was a corporation that provided management services to passenger ship owners, argued

---

[13]  Wood's contract construction position is, in effect, that no one is liable for refusal to comply with the release obligation set out in Section 9.4(e) of the 2005 Stock Purchase Agreement. Thus Wood's wholly-owned company, ERG Holdings, is asserting in the pending arbitration proceeding that ERG Holdings cannot be held liable for refusing to perform the release obligation set out in Section 9.4(e) of the Agreement because that obligation, by its own terms, is described as being an obligation of "Scott Y. Wood," while Wood at the same time seeks a declaratory judgment in this proceeding that he cannot be held individually liable for refusing to perform the release obligation because "Wood in his individual capacity is neither a defined 'Party' nor a signatory to the SPA." *Compare* Respondent's Request To Stay Arbitration Proceedings, Answering Statement And Counterclaim filed with the American Arbitration Association on July 3, 2006, at ¶ 19, a true and correct copy of which, without exhibits, is filed as Exhibit J in Defendants' Appendix *with* Complaint at ¶¶ 8 and 10; Defendants' Appendix, Exhibit K at ¶¶ 8 and 10.

that it was not liable because it had purchased the tickets as an agent on behalf of one of its clients. *Id.* ISP pointed to language in the contract between it and the supplier stating that the supplier "acknowledges that [ISP] is acting as agent for . . . certain vessels, vessel owners and/or Charterers." *Id.* at 426 n.1, 430. The district court, acting through a magistrate, rejected ISP's argument and granted the airline ticket supplier's motion for summary judgment based on another provision in the contract in which ISP had acknowledged that it was "unconditionally obligated" to pay the supplier for any airline tickets that were purchased under the contract. *Id.* at 427, 426 n.1 and 430.

On appeal, ISP contended that the acknowledgement in the contract of its status as an agent for disclosed principals precluded a finding that it was individually liable under the contract, and that the district court's construction of the contract was erroneous because it rendered this provision meaningless in violation of the principle of contract construction under Texas law requiring that a contract be interpreted, where possible, to give effect to all of its provisions. *Id.* at 427 and 429. The Fifth Circuit affirmed, holding that in light of the recognition under Texas law of the principle that "the general rule that an agent is not liable for those contracts that it enters on behalf of a disclosed principal is overcome when the agent expressly or implicitly accepts liability," there was nothing inconsistent about the district court's decision to hold ISP individually liable notwithstanding the contract having contained a "clear statement of ISP's status as an agent." *Id.* at 430-431. ISP could sign the contract as the agent for disclosed principals, but could also agree to pledge its own responsibility in lieu of or in addition to that of its principals. *Id.* at 428 and 430-431.

That is precisely what happened in this case. The terms of the 2005 Stock Purchase Agreement reflect that Scott Wood was acting not just in a representative capacity, but also in an individual capacity when he twice signed the Agreement. Section 9.4(e) mandates that "*Scott Y.*

*Wood . . . shall* give . . . full cooperation to the Buyer [PennTex] in the Buyer's post-Closing prosecution and defense of the Tsar Case . . .," and that *"Scott Y. Wood will,* at Buyer's request . . . either dismiss or release the claims that he has asserted individually in the Tsar Case."[14]  Both of these provisions constitute individual obligations that are to be performed by Scott Wood, as opposed to ERG Holdings or any other designated party, and are reciprocal to indemnity provisions found elsewhere in Section 9.4 that personally benefit Wood.  When Wood agreed to the terms of Section 9.4(e), he was, in effect, pledging his own personal responsibility to fulfill those obligations as consideration for PennTex's agreement to the reciprocal indemnity provisions that are set out in subsections (a) through (d) of Section 9.4 that Wood bargained for during the negotiations that preceded execution of the Agreement.[15]

Under these circumstances, notwithstanding that Scott Wood executed the 2005 Stock Purchase Agreement ostensibly only in representative capacities, consideration of the entirety of the Agreement compels the conclusion that Wood has unambiguously manifested his intent to substitute his own personal responsibility for performance of the personal obligations spelled out in Section 9.4(e) of the Agreement for that of the companies for whom he was also acting as agent, and that his signatures on the Agreement should, therefore, be treated as binding him to arbitrate disputes concerning those contractual obligations pursuant to the dispute resolution provisions of the same Agreement.

---

[14] *See* 2005 Stock Purchase Agreement at Section 9.4(e) (emphasis added); Defendants' Appendix, Exhibit A at p. 29.

[15] *See* Affidavit Of Thomas C. Stabley ("Stabley Affidavit") at ¶¶ 5-7; Exhibit E in Defendants' Appendix at ¶¶ 5-7. *See also* Wood Deposition at pp. 35, 43-47; Exhibit G at pp. 35, 43-47.

II.  **WOOD IS BOUND TO ARBITRATE UNDER THE 2005 STOCK PURCHASE AGREEMENT IRRESPECTIVE OF ANY STATUS HE MAY HAVE AS A NON-PARTY TO THE AGREEMENT BECAUSE ORDINARY PRINCIPLES OF CONTRACT AND AGENCY LAW JUSTIFY BINDING WOOD TO THE ARBITRATION PROVISIONS OF THE 2005 STOCK PURCHASE AGREEMENT.**

A.  **Introduction.**

While Scott Wood's obvious consent is sufficient to find that he is bound to the 2005 Stock Purchase Agreement, ordinary principles of state contract and agency law provide additional, independent grounds for compelling him to arbitrate thereunder.  Although Wood is not specifically designated as a party to the Agreement, the relevant Texas case law establishes that a non-party may be bound to an arbitration agreement under any one of six recognized contract or agency theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary.  *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).  As will be demonstrated in the discussion that follows, the particular facts of this case provide strong support for binding Scott Wood to arbitrate under the 2005 Stock Purchase Agreement pursuant to the last four of these theories.  Indeed, a more compelling case for binding a non-party to an agreement to arbitrate could hardly be imagined.

B.  **Wood Is Bound To Arbitrate Under The 2005 Stock Purchase Agreement Because He Has Derived Substantial Direct Benefits Under The Agreement.**

Scott Wood has demanded and received substantial direct benefits under the 2005 Stock Purchase Agreement, and, as a consequence, Texas law strongly supports treating him as being estopped from attempting to avoid arbitration under the Agreement.  Specifically, the Texas Supreme Court has held that direct benefits estoppel, a version of equitable estoppel that has been applied in the arbitration context, precludes a person from avoiding enforcement of an arbitration provision in a contract when that person has deliberately sought and obtained

substantial direct benefits under the same contract. *See In re Weekley Homes*, 180 S.W.3d 127, 132 (Tex. 2005).

In the *Weekley Homes* decision, the Court concluded that the plaintiff, who was a non-party to a home construction contract containing an arbitration provision, was nevertheless bound by that provision because during performance of the contract she had obtained "substantial actions from [the defendant, who was a party to the contract] by demanding compliance with provisions of the contract." 180 S.W.3d at 129-30, 133. The plaintiff had benefited from the contract in that she had, by claiming authority under it, directed construction, demanded extensive repairs to the home, received reimbursements from the defendant, and conducted settlement negotiations. *Id.* at 129, 133.

In similar fashion, Scott Wood has obtained direct and substantial individual benefits under the 2005 Stock Purchase Agreement. At the time that the 2005 Stock Purchase Agreement was negotiated and executed, Scott Wood was an individual counterdefendant in litigation referred to in Section 9.4 of the Agreement as the "Tsar Case."[16] As such, Wood faced exposure to individual liability for actual and punitive damages on a counterclaim alleging that he had engaged in a conspiracy to commit the torts of conversion and theft.[17] Wood wanted to sell ERG Illinois, Inc. in a transaction that would allow him to walk away from the substantial costs and risks associated with his individual liability exposure in the pending Tsar Case.[18] To accomplish this, Wood, who personally negotiated the 2005 Stock Purchase Agreement, insisted that the

---

[16] *See* Stabley Affidavit at ¶ 6, Defendants' Appendix, Exhibit E at ¶ 6; and Shields Affidavit at ¶ 5, Defendants' Appendix, Exhibit F at ¶ 5.

[17] *See* Shields Affidavit at ¶ 5; Defendants' Appendix, Exhibit F at ¶ 5.

[18] *See* Stabley Affidavit at ¶¶ 5-6, Defendants' Appendix, Exhibit E at ¶¶ 5-6; and Wood Deposition at pp. 35 and 43-48; Defendants' Appendix, Exhibit G at pp. 35 and 43-48.

Agreement include for his personal benefit a complete and financially-secured indemnity with respect to the Tsar Case.[19]

Section 9.4 of the 2005 Stock Purchase Agreement – "Indemnification Provision For Seller's Benefit Regarding Specific Litigation" – achieved Wood's goal. In that section, Wood is identified as a beneficiary of the Buyer's indemnification obligations explicitly by name (in Section 9.4(a)), and as a person who falls within the definition of "Buyer Indemnified Parties" set out in Article 1 of the Agreement (in Sections 9.4(b), (c) and (d)).[20]   The indemnity obligations include payment of the costs of litigating the Tsar Case and any judgments, awards, damages or sanctions that might be entered against the indemnified parties.[21]   The indemnity protection is unlimited in amount, and was secured by the posting of a letter of credit in favor of the "Buyer Indemnified Parties" (which included Scott Y. Wood) in the amount of $1,000,000.00.[22]   Upon execution of the 2005 Stock Purchase Agreement, therefore, Wood immediately obtained a substantial and direct benefit under the Agreement in the form of absolute and unlimited contractual protection from the future litigation costs and liability exposure associated with the counterclaim that had been asserted against him individually in the Tsar Case.[23]

---

[19] See id.

[20] See 2005 Stock Purchase Agreement at Article 1 and Sections 9.4(a), (b), (c) and (d); Defendants' Appendix, Exhibit A at pp. 2 and 28-29.

[21] See 2005 Stock Purchase Agreement at Sections 9.4(a), (b) and (c); Defendants' Appendix, Exhibit A at pp. 28-29.

[22] Compare 2005 Stock Purchase Agreement at Sections 9.4(a), (b) and (c), Defendants' Appendix, Exhibit A at pp. 28-29 (imposing indemnity obligations) with 2005 Stock Purchase Agreement at Section 9.4(d), Defendants' Appendix, Exhibit A at p. 29 (imposing the letter of credit obligation securing the Buyer's indemnity obligations).

[23] See 2005 Stock Purchase Agreement at Sections 9.4(a), (b) and (c); Defendants' Appendix, Exhibit A at pp. 28-29.

Throughout 2005 and into 2006, Wood repeatedly demanded that the Buyer comply with its obligation under Section 9.4(a) of the 2005 Stock Purchase Agreement to "[p]ay any and all costs of the Company, Scott Y. Wood, or any of the Buyer Indemnified Parties, which may be incurred in the Tsar Case after the Closing Date" by requesting reimbursement for the attorneys' fees and costs incurred by his personal attorney, John Zukowski, in representing him in the Tsar Case.[24]   Through these demands, Wood has obtained reimbursement payments pursuant to the indemnity provisions of the 2005 Stock Purchase Agreement that total $79,144.70.[25]

Finally, on March 2, 2006, Wood obtained yet another direct and substantial benefit under the 2005 Stock Purchase Agreement:  the delivery to him of a "Full And Complete Release" executed by  Tsar Energy II, LLC and its principal, Richard M. Cheatham.[26]   This release, which explicitly recites that it should be construed "so as to carry out their [the releasing parties'] intent to release Scott Y. Wood from 'all matters in the Tsar Case' as that language is used in Section 9.4(e) of the [2005] Stock Purchase Agreement," is broadly worded to cover all matters in the Tsar Case, as well as "All Claims" (as broadly defined therein) arising out of "Wood's Actions" (as broadly defined therein) that relate to Wood's past dealings with Tsar and Cheatham, whether or not such dealings have been made the basis of a claim in the Tsar Case.[27]

Under these circumstances, Wood should be estopped from denying responsibility to arbitrate under the 2005 Stock Purchase Agreement.  This is not a case in which Wood has

---

[24] *See* Stabley Affidavit at ¶¶ 8-9, Defendants' Appendix, Exhibit E at ¶¶ 8-9; and copies of Wood's requests for reimbursement and checks in full payment thereof filed in Defendants' Appendix as Exhibits B and C, along with a copy of Wood's pending request for reimbursement filed in Defendants' Appendix as Exhibit D.

[25] *See id.*

[26] *See* Full And Complete Release, Defendants' Appendix, Exhibit H; and Shields Affidavit at ¶ 7, Defendants' Appendix, Exhibit F at ¶ 7.

[27] *See* Full And Complete Release; Defendants' Appendix, Exhibit H.

received mere incidental benefits from some contract he had no part in making. On the contrary, Wood participated in the negotiations that culminated in execution of the Agreement, and insisted upon provisions that directly and significantly redound to his own personal financial benefit. Wood has made repeated claims under the Agreement and has knowingly accepted every personal benefit flowing to him. Wood's wholehearted embrace of the Agreement gave the defendants every reason to believe that he had accepted its terms. But now, having been called upon to comply with the Agreement's arbitration obligation, Wood suddenly claims that he is a total stranger to the Agreement. Wood's position smacks of opportunism, but fortunately for the defendants, equity means a "nonparty cannot both have his contract and defeat it too." *In re Weekley Homes,* 180 S.W.3d at 135.

Wood has suggested, in his Complaint herein, that his status as a defendant rather than a plaintiff in the related arbitration proceeding should be a significant factor in this Court's analysis of the arbitrability issue.[28] However, consideration of the underlying rationale that has guided the courts in binding non-parties to arbitrate under the direct benefits estoppel theory confirms that the test that has actually been applied is not a formulaic one that gives controlling effect to the non-party's status as either a plaintiff or defendant with respect to the claim to be arbitrated, but rather is a flexible, fact-intensive inquiry focusing on whether the non-party has knowingly exploited the agreement or otherwise embraced its terms by accepting direct benefits thereunder such that it would be appropriate to bind the non-party to the arbitration provision of the agreement. *See In re Weekley Homes,* 180 S.W.3d at 135 ("Indeed, the equitable nature of

---

[28] *See* Complaint at ¶ 10 ("Wood has refused the demand. Wood is not a 'Party' to the SPA as defined by the SPA. Wood has not filed a lawsuit alleging any claim subject to the SPA or made a claim for any benefit from the SPA. Wood has no obligation to comply with the terms of the SPA."); Defendants' Appendix, Exhibit K at ¶ 10.

the [direct benefits estoppel] doctrine may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case.").

Although courts have understandably had little difficulty in finding that a non-party plaintiff has embraced an agreement when the non-party has filed suit premised in part on that agreement, it does not follow that a non-party defendant is automatically immune from having to arbitrate under an agreement from which it has derived substantial direct benefits.[29]   The knowing exploitation of an agreement by a non-party defendant may not always be as immediately self-evident as in instances involving non-party plaintiffs who have sued on an agreement; however, as noted by the Texas Supreme Court in *Weekley Homes*, a non-party can, by "means other than [filing] a lawsuit," embrace and benefit from an agreement to an extent that equity demands the non-party be compelled to defend a claim in arbitration pursuant to that agreement. *In re Weekley Homes*, 180 S.W.3d at 132, 134-35 (concluding that although the plaintiff's claim was independent of the contract, "her prior exercise of other contractual rights

---

[29] Decisions such as *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003), suggesting that whether a non-party has brought suit premised in part on the agreement containing the arbitration clause can be an "important distinction," 345 F.3d at 362, should not be interpreted as holding that such a factual circumstance is a *necessary* rather than merely *sufficient* condition for applying direct benefits estoppel. This Court's decision in *International Demographics, Inc. v. SF Newspaper Co.*, No. 06-0342, 2006 WL 1897042, at *6-*7 (S.D. Tex. July 10, 2006), arguably interprets *Bridas* in this manner when it emphasizes that the decision in *Weekley Homes* involved a "nonsignatory [who] was a *plaintiff* seeking damages related to the contract." *Id.* at p. 7 (emphasis in the original). In fact, the Texas Supreme Court stressed in *Weekley Homes* that "[t]here is nothing in the sparse record here to suggest [the non-party's] claim is different from what any bystander might assert, or what she might assert if the contractor were not Weekley." 180 S.W.3d at 132. Accordingly, it is clear that, as noted by this Court in *International Demographics*, the Texas Supreme Court was in fact extending "the direct-benefits estoppel doctrine beyond *Bridas's* holding" in finding that the non-party in that case, whose claim was in no way "premised in part" on the home construction contract in question, but at most was "related to the contract," was bound to arbitrate under the contract. *International Demographics* at 7. In any event, *Bridas* and similar cases are applications of federal common law, whereas the governing law in this case is Texas law, which, given the broad and flexible approach emphasized in *Weekley Homes*, supports finding that Wood is bound to arbitrate as a non-party who has sought or obtained direct benefits from a contract "by means other than a lawsuit." *In re Weekley Homes*, 180 S.W.3d at 133-35.

and her equitable entitlement to other contractual benefits prevents her from avoiding the arbitration clause here").[30]

The only reason Scott Wood did not file a lawsuit to obtain benefits from the 2005 Stock Purchase Agreement was because he did not have to. Defendants, unlike Wood, honored their obligations and complied with each and every demand Wood made under the Agreement. That Wood has not filed a lawsuit does not change that he has done everything short of a lawsuit to claim benefit after benefit from the Agreement, and that defendants reasonably relied on his conduct of claiming those benefits under color of the Agreement as indicating he would not later repudiate the Agreement's reciprocal obligations. Under these circumstances, holding that the procedural posture of the arbitration proceeding absolves Wood from having to comply with the arbitration provision in the 2005 Stock Purchase Agreement would elevate form over substance and disregard the controlling Texas authority cited and discussed above.[31]

---

[30] Other courts have also recognized that a non-party may be bound to a contract through direct benefits estoppel irrespective of whether that nonsignatory has filed a lawsuit premised on the agreement containing an arbitration provision. *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (holding that nonsignatory was bound by arbitration provision of agreement because nonsignatory had knowingly accepted benefits of agreement through continuing use of trade name); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (holding that nonsignatory ship owners were bound by arbitration provision in contract because they had received several direct benefits under that contract, including significantly lower insurance rates and ability to sail under French flag); *Legacy Wireless Serv., Inc. v. Human Capital, L.L.C.*, 314 F. Supp.2d 1045, 1056-57 (D. Or. 2004) (holding that nonsignatory could be bound to arbitration provision in agreement through direct benefits estoppel even though it had not sued under the agreement, and recognizing that nonsignatory may have received direct benefits under the agreement in the form of monetary payments); *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp.2d 519, 523 (E.D. Pa. 2003) (finding that principles of estoppel preclude nonsignatory from avoiding arbitration clause where nonsignatory received direct benefit of having custom-made mobile telephone components made available to it through the contract).

[31] To put the issue fully in context, assume for a moment that the claims that Wood filed with PennTex seeking reimbursement of his legal expenses incurred in the Tsar Case pursuant to the indemnity provisions of the 2005 Stock Purchase Agreement had been refused rather than honored. If Wood had filed suit on those claims, surely there would be no doubt that PennTex could compel Wood to arbitrate his claims pursuant to the 2005 Stock Purchase Agreement. *See In re FirstMerit Bank*, 52 S.W.3d 749, 755 (Tex. 2001). In such a case, Wood's status as a person who is not a designated party to the 2005 Stock Purchase Agreement would clearly present no impediment to treating him as bound to arbitrate thereunder since he would have embraced the contract by obtaining direct benefits under it, and he would occupy the status of a plaintiff asserting a claim for damages that is premised on the Agreement. The question here is whether Wood's status as a defendant rather than plaintiff with respect to the claim sought to be arbitrated, standing alone, ought to determine the outcome of the arbitrability analysis. For the reasons discussed above, it should not.

### C.    Wood Is Bound To Arbitrate Under The 2005 Stock Purchase Agreement Because He Is A Third-Party Beneficiary Under The Agreement.

Scott Wood's status as a third party beneficiary under the 2005 Stock Purchase Agreement provides another independent basis for binding him to arbitrate under the Agreement. *See In Re Kellogg, Brown & Root,* 166 S.W.3d at 739.[32]   Wood's status as an intended, third party beneficiary under the 2005 Stock Purchase Agreement cannot be disputed given the clear manifestations of the intent to benefit him that are apparent throughout the indemnity provisions of Section 9.4 of the Agreement.[33]   As a consequence, ordinary principles of Texas contract law support binding Wood to arbitrate under the 2005 Stock Purchase Agreement given that as a third party beneficiary he is bound to the provisions of the Agreement to the same extent as are the designated parties thereto.[34]

---

[32] This theory for binding Wood to arbitrate under the 2005 Stock Purchase Agreement overlaps to a considerable degree with the direct benefits estoppel theory previously discussed, but is conceptually distinct in the sense that it is premised on Wood's intention, and the intentions of the designated parties to the 2005 Stock Purchase Agreement, at the time of the execution of that Agreement, whereas the direct benefits estoppel theory focuses more on conduct and events occurring after execution of the Agreement.

[33] Under Texas law, a person is a third party beneficiary when the intention to confer a direct benefit on that person is "clearly and fully spelled out" in the contract at issue. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999). As discussed above, the indemnity provisions of the 2005 Stock Purchase Agreement explicitly state that the Buyer will "[p]ay any and all costs of the Company, *Scott Y. Wood,* or any of the Buyer Indemnified Parties, which may be incurred in the Tsar Case after the Closing Date." See 2005 Stock Purchase Agreement at Section 9.4(a) (emphasis added); Defendants' Appendix, Exhibit A at p. 28. Additionally, as a controlling person and president of the "Seller" under the Agreement, Wood is included in the definition of Buyer Indemnified Parties set out in Article 1 of the Agreement, and as such is entitled to the other indemnity benefits of Section 9.4. See 2005 Stock Purchase Agreement at Article 1 and Sections 9.4(b), (c) and (d); Defendants' Appendix, Exhibit A at pp. 1-2 and 28-29. Given these provisions, the only reasonable interpretation of the 2005 Stock Purchase Agreement is that it "clearly and fully spell[s] out" an intention to confer benefits directly on Scott Wood, who must therefore be treated as an intended third party beneficiary under the Agreement.

[34] Under Texas law, a third party beneficiary of a contract is bound by all of the terms of the contract. *See In re Rangel,* 45 S.W.3d 783, 787 (Tex. App.—Waco 2001, no pet.) (holding that as a third party beneficiary, nonsignatory was bound by the terms of the contract, including the arbitration provision); *Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518, 520 (Tex. App—Austin 1998, no pet.) (holding that nonsignatory was bound by the terms of the contract, including the arbitration provision, because absence of signature had "no legal significance" due to party's status as third party beneficiary). *See also Stonewall Ins. Co. v. Modern Exploration Inc.,* 757 S.W.2d 432, 434-35 (Tex. App.—Dallas 1998, no pet.) (stating that third party beneficiary "steps into shoes" of contracting party and is thus bound by conditions precedent in contract); *Alpine Ocean Seismic Survey, Inc. v. F.W. Myers & Co.,* 23 F.3d 946, 948 (5th Cir. 1994) (third party beneficiary takes no greater rights than original contracting party).

As noted in the above discussion, Wood's status as a third party beneficiary under the 2005 Stock Purchase Agreement has allowed him to repeatedly enforce its provisions for his own personal benefit. But this same status carries with it the obligation that Wood bear both the benefits and burdens of the Agreement, including, in particular, the obligation to comply with its arbitration provisions. Wood, as a third party beneficiary under the 2005 Stock Purchase Agreement, can no more pick and choose among the provisions of the Agreement than could a designated party thereto. Wood's attempt to do so here is particularly inappropriate given that the claim that the defendants seek to enforce against Wood in the related arbitration proceeding is one that seeks enforcement of Wood's release obligation in Section 9.4(e) of the Agreement, which was a material factor in the defendants' agreement to afford Wood the corresponding indemnity rights that form the basis for Wood's third party beneficiary status.[35]

Under the foregoing circumstances, Scott Wood's status as a third party beneficiary under the 2005 Stock Purchase Agreement makes it appropriate that he be bound to comply with the arbitration provision in the Agreement that confers upon him the third party beneficiary rights that he has so knowingly and repeatedly exploited.[36]

---

[35] *See* Stabley Affidavit at ¶ 7 ("The commitments of Scott Y. Wood contained in the final negotiated form of Section 9.4 of the 2005 Stock Purchase Agreement were a material factor in PennTex's determination to enter into the Agreement."); Defendants' Appendix, Exhibit E at ¶ 7.

[36] In *Bridas,* the Fifth Circuit, applying federal common law, declined to compel a third party beneficiary to arbitrate a dispute it had not initiated in court or otherwise sought to enforce. 345 F.3d at 363. However, as discussed above, Wood has in fact repeatedly enforced the 2005 Stock Purchase Agreement by making demands for reimbursement under it, and PennTex has complied with those demands. In this case, to which Texas law applies, it is clear that Wood should be compelled to arbitrate because he has eagerly embraced his status as a third party beneficiary, and therefore cannot disavow his obligation to arbitrate under the 2005 Stock Purchase Agreement.

**D.    Wood Is Bound To Arbitrate Under The 2005 Stock Purchase Agreement Because ERG Illinois Holdings, Inc. Bound Wood To That Agreement As His Agent.**

Scott Wood is bound to arbitrate under the 2005 Stock Purchase Agreement because ERG Illinois Holdings, Inc., his solely-owned company, clearly acted as his agent with apparent authority to bind him individually when Wood caused it to enter into the Agreement, and Texas law recognizes such an agency relationship as furnishing an independent basis for binding a non-party to arbitrate. *See In re Kellogg, Brown & Root,* 166 S.W.3d at 739.

ERG Holdings entered into the 2005 Stock Purchase Agreement on its own behalf and as agent for its principal, Scott Wood. ERG Holdings had apparent authority to bind Wood to the 2005 Stock Purchase Agreement and the release obligation in Section 9.4(e) that only he could perform. *See Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex. 1981) ("Apparent authority is based on the doctrine of estoppel, and one seeking to charge the principal through apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that he purports to exercise."). In this case, Wood more than acquiesced in ERG Holdings' promise in the 2005 Stock Purchase Agreement that Wood would give full cooperation, and would dismiss or release his individual claims in the Tsar Case under the stated circumstances: Wood affirmatively participated in negotiations and agreed to these individual obligations, presumably because he felt that they were necessary consideration to close the transaction and secure the individual benefits he sought.

Given Wood's status as sole owner and president with complete control over ERG Holdings, PennTex had every reason to believe that ERG Holdings, represented in the negotiations relating to the 2005 Stock Purchase Agreement by Wood himself, was authorized by Wood to make these promises. Any reasonably prudent party could have believed, and relied on,

the fact that if ERG Holdings really lacked authority to bind Wood, it would have been easy enough for Wood, who was the signatory for ERG Holdings, to prevent ERG Holdings from purporting to bind him individually.  Despite these appearances, Wood did nothing to disabuse PennTex of any notion that his solely-owned company had authority to bind him to an individual obligation only he could perform, that was a material part of the transaction and that was reciprocal to individual obligations he so carefully sought.  Under these circumstances, Wood should not be heard now to argue that ERG Holdings had no authority to bind him to arbitrate under the 2005 Stock Purchase Agreement.  *See In re Weekley Homes*, 180 S.W.3d at 131, 131 n.15; *Biggs*, 611 S.W.2d at 629 (Tex. 1981).

> **E.     Wood Is Bound To Arbitrate Under The 2005 Stock Purchase Agreement Because Wood Is The Alter Ego Of ERG Illinois Holdings, Inc. And Is Attempting To Use Its Corporate Form To Perpetrate A Fraud.**

Scott Wood is bound to the 2005 Stock Purchase Agreement as the alter ego of an indisputable designated party thereto, ERG Illinois Holdings, Inc.  The courts have recognized that the alter ego doctrine provides a distinct basis for binding a non-party to an arbitration agreement.  *See In re Kellogg, Brown & Root*, 166 S.W.3d at 739.  Under Texas law, a shareholder or owner of a corporation can be liable for contractual obligations of the corporation if that shareholder or owner "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit" of the shareholder or owner.  *See* TEX. BUS. ORG. CODE § 21.223(b).  *See also In re Weekley Homes*, 180 S.W.3d at 131, 131 n.15 (Tex. 2005).

Wood's position that he is not personally bound by the release obligations set out in Section 9.4(e) of the 2005 Stock Purchase Agreement, coupled with his claim that ERG Holdings has not breached the Agreement, inevitably leads to the conclusion that Wood used ERG

Holdings to commit actual fraud for his own personal benefit. Under Texas law, fraud involves a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied on, and which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Actual fraud involves dishonesty of purpose or intent to deceive. *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986) (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1935)).

As discussed above, Wood was personally involved in negotiating the 2005 Stock Purchase Agreement for ERG Holdings and insisted upon the personal indemnity provisions regarding the Tsar Case that he has since embraced and from which he has reaped substantial personal benefits. As even the briefest examination of Section 9.4 of the 2005 Stock Purchase Agreement confirms, the Buyer agreed to confer those personal benefits on Scott Wood only in return for the explicit promise that Wood would fully cooperate and dismiss or release his individual claims in the Tsar Case under the stated circumstances.

Wood's cooperation and dismiss or release obligations were individual obligations Wood negotiated and accepted in order to secure substantial personal benefits for himself. Having received these benefits, Wood now hides behind the corporate form and claims he is not personally bound by the 2005 Stock Purchase Agreement, and that ERG Holdings has complied fully with its obligations. In light of Wood's position, it is highly doubtful he ever entertained any thought that the personal obligations in his name would be performed. This necessarily means that when he signed the 2005 Stock Purchase Agreement, he caused his company, ERG Holdings, over which he possessed complete control as sole owner and president, to enter into a contract containing as consideration individual obligations with which, unbeknownst to the Buyer parties to the Agreement, he had no intention of complying. This constitutes a blatant

abuse of the corporate form and warrants disregarding the corporate fiction. Scott Wood should be bound to arbitrate under the 2005 Stock Purchase Agreement as the alter ego of the designated party, ERG Holdings, whose corporate form he has abused.

## CONCLUSION

For the foregoing reasons, PennTex and Shaner pray that the Court sign forthwith the proposed order granting Defendants' Motion To Compel Arbitration And To Stay This Action, and that PennTex and Shaner have such other and further relief to which they may be justly entitled.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

By: _____
    J. Todd Shields
    Federal I.D. No. 3582
    State Bar No. 18260500
    1301 McKinney Street, Suite 5100
    Houston, Texas  77010-3095
    713/651-3762 (telephone)
    713/651-5246 (facsimile)

**ATTORNEY-IN-CHARGE FOR
DEFENDANTS AND COUNTER-
CLAIMANTS, PENNTEX RESOURCES,
L.P. AND LANCE T. SHANER**

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2006, I complied with Rule 5 of the Federal Rules Of Civil Procedure by serving a true and correct copy of the above and foregoing instrument, together with this certificate of service, on the attorney-in-charge for plaintiff by courier, return receipt requested.

J. Todd Shields