## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT Y. WOOD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2198 |
| | § | |
| PENNTEX RESOURCES LP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

PennTex Resources LP has moved to confirm the Corrected Commercial Award of Arbitrator entered in September 2007. (Docket Entry No. 29). Scott Y. Wood responded and moved to vacate. (Docket Entry No. 35).[1] PennTex has also moved to include a provision in the order confirming the Award to offset the amount the Award ordered Wood to pay PennTex against the smaller amount the Award ordered PennTex to pay Wood. (Docket Entry No. 32).[2] Finally, PennTex has moved for sanctions under Rule 11(b)(2) on the ground that Wood's argument for vacatur was not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." (Docket Entry No. 46).[3]

---

[1] PennTex responded to Wood's motion to vacate, (Docket Entry No. 42); and Wood replied, (Docket Entry No. 44). PennTex filed a supplemental memorandum in opposition to Wood's motion to vacate, (Docket Entry No. 51), and Wood responded, (Docket Entry No. 52).

[2] Wood responded, (Docket Entry No. 38), and PennTex replied, (Docket Entry No. 41).

[3] Wood responded, (Docket Entry No. 47), and PennTex replied, (Docket Entry No. 49).

Based on a careful review of the pleadings, the motions, responses, and replies, the parties' submissions, and the applicable law, this court: (1) grants PennTex's motion to confirm the Corrected Commercial Award of Arbitrator and denies Wood's motion to vacate the Award; (2) grants PennTex's request to offset the awards; and (3) denies PennTex's motion for sanctions.  The reasons for these rulings are set out in detail below.

## I.    Background

On January 12, 2005, PennTex and Lance Shaner acquired ERG Illinois, Inc. from ERG Illinois Holdings, Inc. through a Stock Purchase Agreement ("SPA").  (Docket Entry No. 10, Ex. A).  Shaner is PennTex's president.  Wood is the president, sole director, and sole shareholder of ERG Holdings and the president of its wholly owned subsidiary, ERG Illinois, the company that PennTex bought.

The SPA contained the following arbitration clause:

**11.6  Binding Arbitration**

(a)    All disputes arising under this Agreement, ("Disputes") will be resolved as follows: first senior management of Buyer and Seller will meet to attempt to resolve such Dispute.  If the Dispute cannot be resolved by agreement of the Parties, any Party may, after 30 days following the first meeting of Senior Management of Buyer and Seller, make a written demand for binding arbitration of the Dispute in accordance with this Section 11.6; provided that the foregoing shall not preclude equitable or other judicial relief to enforce the provisions hereof or to preserve the status quo pending resolution of Disputes; and provided further and subject to Section 9.4 that resolution of Disputes with respect to claims by Third Persons will be deferred until any judicial proceeding with respect thereto are concluded.  Subject to the provisions of this Section 11.6, the Commercial Arbitration Rules of the American

> Arbitration Association in effect on the date hereof will apply,
> and except as the applicable rules are modified by this
> Agreement, will apply.

(Docket Entry No. 10, Ex. A at 33).  The SPA set out a "minimum set of rules in the arbitration."  The rules included a three-arbitration panel, with one selected by each party and the third selected by the two party-selected members.   All the arbitrators were to be "knowledgeable regarding transactions similar to the Transactions in the oil and gas exploration and development industry."   (*Id.*, Ex. A at 33–34).   The rules set out requirements for filings, discovery limits, exchange of exhibits, and schedules for hearings.  The rules included the following provision:

> (vii)   The arbitrators will issue a written opinion and
> specify the basis for their decision, the basis for the Damages
> award and a breakdown of the Damages awarded, and the basis
> of any other remedy.   The arbitrators' decision will be
> considered as a final and binding resolution of the disagreement,
> will not be subject to appeal and may be entered as an Order in
> any court of competent jurisdiction in the United States;
> provided that this Agreement confers no power or authority
> upon the arbitrators to render any decision that is based on
> clearly erroneously findings of fact, that manifestly disregards
> the law, or exceeds of the powers of the arbitrator, and no such
> decision will be eligible for confirmation. Each Party agrees to
> submit to the jurisdiction of any such court for purposes of the
> enforcement of any such Order.   No Party will sue any other
> Party except for enforcement of the arbitrator's decision if such
> other Party is not performing in accordance with the arbitrator's
> decision.   The provisions of this Agreement will be binding on
> the arbitrators.

(*Id.*, Ex. A at 35).  The SPA provided that Texas law would apply:

> This Agreement and the performance of the Transactions and
> obligations of the Parties hereunder will be governed by and

3

        construed in the State of Texas, without giving any effect to any
        choice of law principles.

(*Id.*).

      Before the SPA was executed, Wood and ERG Illinois had been in litigation in Texas state court with Tsar Energy II, L.L.C. and its principal member, Richard Cheatham, over a joint venture between ERG Illinois and Tsar involving oil-producing properties.  (Docket Entry No. 1 at 2).  In the Texas case, Wood and ERG Illinois claimed that Tsar and Cheatham tortiously interfered with a prospective contract Wood and ERG Illinois had with another entity.  (Docket Entry No. 11, Ex. A).  Wood sought almost $2 million in damages against Tsar and Cheatham.  Tsar and Cheatham counterclaimed against Wood individually, asserting conspiracy with ERG Illinois to commit conversion and fraud.  The SPA addressed the then-pending Tsar litigation and the liability that might result.

      Section 9.4 of the SPA provided that PennTex would be responsible for damages, fees, costs, and expenses incurred by Wood and the other "Buyer Indemnified Parties" in the prosecution and defense of the Tsar litigation and required PennTex to post a $1 million letter of credit to secure this obligation.  Wood was a "Buyer Indemnified Party."  If PennTex met its Section 9.4 obligations, it would have "full control of the representation of Seller Parties and Scott Y. Wood in the Tsar Case effective as of the Closing . . . and Scott Y. Wood and the other Buyer Indemnified Parties shall give their full cooperation to the Buyer in the Buyer's post-Closing prosecution and defense of the Tsar Case and Scott Y. Wood will, at Buyer's request and upon being furnished a full and complete release of all matters in the

Tsar Case, either dismiss or release the claims that he has asserted individually in the Tsar Case." (Docket Entry No. 10, Ex. A at 29).

After the SPA was executed, PennTex posted the $1 million letter of credit. (Docket Entry No. 11, Ex. A at 2). PennTex also paid the attorney's fees ERG Illinois and Wood demanded. (Docket Entry No. 10, Ex. I at 3). In January 2006, Tsar and Cheatham nonsuited the counterclaims they had asserted against Wood, without prejudice. (Docket Entry No. 10, Ex. F at 2–3). In May 2006, PennTex provided Wood a full and complete release executed by Tsar and Cheatham. In the May 2006 letter that delivered the executed release to Wood, PennTex and Shaner demanded that Wood dismiss or release the claims he had asserted against Tsar and Cheatham in the state-court case. (Docket Entry No. 10, Ex. H at 8). Wood refused to do either by letter dated May 3, 2006. Wood insisted on pursuing his claims against the Tsar parties. In June 2006, PennTex and Shaner began the arbitration proceeding against ERG Holdings and Wood, seeking specific performance of Wood's obligation under the SPA to release or dismiss his claims against Tsar and Cheatham. (Docket Entry No. 10, Ex. I).

In June 2006, Wood filed suit in this court seeking a declaratory judgment that: (1) he was not obligated to arbitrate the claim that he must release or dismiss his claims against the Tsar parties; and (2) he would not be bound by any such arbitration. PennTex and Shaner counterclaimed to compel Wood to arbitrate the issue of whether the SPA required him to dismiss or release his claims against the Tsar parties in state court. On October 23, 2006, this court found that Wood was required to participate in the arbitration and granted PennTex's

5

and Shaner's motion to compel arbitration.  (Docket Entry No. 21).  This case was stayed and administratively closed on November 2, 2006 pending the arbitration. (Docket Entry No. 23).

In accordance with the arbitration clause in the SPA, PennTex and Shaner appointed Frank W. Blue as an arbitrator and Wood appointed Allen D. Cummings.  The two party-selected arbitrators then appointed R. Doak Bishop to be the third panel member.  The parties filed dispositive motions, and on June 19, 2007, the arbitration panel conducted a hearing at which it heard oral arguments on those motions.  On June 25 and 26, 2007, the arbitration panel conducted a final hearing in Houston, Texas, at which evidence and arguments were presented.  The Commercial Award of Arbitrator issued in August 2007, signed by R. Doak Bishop and Allen D. Cummings, and dissented from by Frank W. Blue.  The Award was "in full settlement of all claims and counterclaims submitted to this Arbitration."  On September 19, 2007, the panel issued the Corrected Commercial Award of Arbitrator.  On September 23, 2007, Frank W. Blue released a statement confirming that his dissenting opinion issued with the Commercial Award of Arbitrator applies to the Corrected Award.

The panel entered a twenty-page opinion setting out the Award.  The Award provided the following relief:

## I.    Conclusion and Relief Granted

85.    The Tribunal hereby awards the following relief:

(a)    Claimant PennTex shall pay to Respondent Wood the amount of $92,540.07 for attorneys' fees and expenses incurred by Wood relative to the Tsar Case.

6

(b)     With respect to Claimant's SPA Post-Closing Purchase Price Adjustment claim, Respondent ERG shall pay Claimant PennTex the amount of $88,776.84, the latter amount to accrue interest at six percent (6%) per annum until paid;

(c)     Regarding Claimant's claim for specific performance requiring the return of the SPA-required LC, Claimant's SPA obligation to retain said LC in force ended no later than June 4, 2007.  Respondents Wood and ERG are therefore jointly and severally responsible for promptly returning to PennTex the original and all copies of the Letter of Credit and shall not draw upon, or attempt to draw upon, such LC at any time prior to such prompt return, conditioned upon PennTex's prior payment of Wood's attorneys' fees of $92,540.07, as provided above.  Further, Respondents shall properly assist Claimant in causing such LC to be properly cancelled pursuant to UCP Pub 500 requirements, including but not limited to execution of any letter necessary to meet these requirements.

(d)     Regarding Claimant's claim for specific performance by Respondent Wood of his contractually-required release obligation, Respondent Wood became obligated to provide to Claimant a contractually-related release of his Tsar Case claims no later than June 4, 2007.  Respondent Wood shall therefore promptly provide Claimant a signed release or dismissal of his claims filed in the Tsar Case against the Tsar Parties;

(e)     Claimant's claim for $15,000, the cost of LC renewal, is denied.

(f)     Claimant Shaner having been dismissed from this proceeding, Claimant PennTex shall be responsible for performance of all obligations imposed on Claimant by the Tribunal, and Claimant PennTex shall be the sole beneficiary of such awards as the Tribunal enters in favor of Claimant.

(g)     Respondent Wood shall be responsible for and shall pay to Claimant PennTex the sum of $217,428.76 in attorneys' fees, the same having been incurred by Claimant in federal court litigation and in this arbitration relative to the enforcement against Respondent Wood of Wood's contractually-related release obligation (the same having been determined to have been reasonably and necessarily incurred and supported by documentation made a part of the record of this proceeding);

(h)     Respondent ERG shall be responsible for and shall pay to Claimant PennTex attorneys' fees of $67,877.99 for fees incurred by PennTex in pursuing all of its Claims in this arbitration proceeding, other than those incurred by Claimant PennTex relative to the Respondent Wood release obligation referred to in (g) above, the same having been determined to have been reasonably and necessarily incurred and supported by documentation made a part of the record of this proceeding;

(i)     Respondent Wood shall be responsible for and shall pay to Claimant PennTex $14,302 for expenses incurred by Claimant relative to this arbitration and the related federal court litigation; Respondent ERG shall be responsible for and shall pay to Claimant PennTex $7,368.25 for expenses incurred by Claimant relative to this arbitration proceeding, all of which have been submitted, with proper support, as part of the record of this case.

. . .

87.     This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied.

(*Id.*, Ex. I at 19–21).

The panel found that PennTex had not paid all Wood's attorneys' fees in the Tsar litigation, including fees incurred in prosecuting his counterclaims.  (*Id.*, Ex. I at 8).  The

8

panel rejected Wood's argument that PennTex had "not satisfied the condition precedent of not having breached Art. 9.4 (because it has not paid all attorneys' fees of Wood in the Tsar Case)." (*Id.*, Ex. I at 9). The panel found that PennTex "was not in breach of Section 9.4, although it does have an obligation to pay certain of Wood's attorneys' fees," because "Wood did not bill [PennTex] his attorneys' fees for prosecuting his Tsar Case claims, and Claimant did not refuse a demand for such payment, for most of the pendency of the Tsar Case after the Closing of the transaction between [PennTex] and [Wood]." (*Id.*, Ex. I at 10). Wood did not request payment of the fees until February 28, 2007. Because PennTex had 30 days from the request to pay those fees, "no breach could have occurred until approximately April 30, 2007." (*Id.*). By that point, the parties were already in arbitration and PennTex had provided Wood with a release of the claims against him in the Tsar litigation. The Award stated that "[w]hile the Tribunal does not hold that this was sufficient to discharge [PennTex's] obligations to [Wood], it cannot find a material breach by [PennTex] sufficient to discharge Wood's alleged obligation under Article 9.4(e)." The Award stated that "[e]ven if claimant was in breach after April 1, 2007, that breach can be cured by payment of Wood's remaining attorneys' fees in the Tsar Case. . . ." (*Id.*, Ex. I at 10–11).

In ordering Wood to pay PennTex's attorneys' fees, the panel awarded only a portion of the fees PennTex claimed. The total fee award for the federal court litigation Wood initiated and the arbitration PennTex pursued was $217,428.76. The panel awarded as reasonable fees, proportionate to the claims on which PennTex prevailed, 50% of the fees

PennTex sought for the federal court litigation seeking to compel arbitration and 60% of the fees PennTex sought for the arbitration.  (*Id.*, Ex. I at 19).

PennTex moved to confirm the Award.  Wood moved to vacate.  Wood based his motion on the argument that the panel based two parts of the Award on "clearly erroneous findings of fact."  Wood argued that it was clearly erroneous to find that PennTex did not breach Section 9.4 of the SPA despite the failure to pay certain of Wood's attorneys' fees. Wood also argued that the Award requiring Wood to pay the fees that PennTex incurred in enforcing Wood's release obligation was "clearly erroneous."  Because the SPA's arbitration agreement stated that it "confers no power or authority upon the arbitrators to render any decision that is based on clearly erroneously findings of fact," Wood argued that by making clearly erroneous factfindings, the arbitrators "exceeded their powers," requiring vacatur. PennTex responded that Wood's argument contravenes the FAA and lacks record support.

## II.     The Motions to Confirm and to Vacate

### A.     The Legal Standard

The Federal Arbitration Act provides four statutory grounds for vacating an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; [and]

10

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008), the Supreme Court held that the statutory bases for vacatur under the FAA are exclusive and that contracting parties may not add grounds for vacatur beyond those provided in the Act.  *See id.* at 1404–05.  The arbitration agreement before the Court stated that a district court asked to enter judgment on any award "shall vacate, modify, or correct any award: (i) where the arbitrator's findings of fact are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous."  *Id.* at 1400–01.  The *Hall Street* Court rejected the parties' contractual expansion of the FAA's grounds for vacatur.  *Id.* at 1403–06.  The Court emphasized the importance of the limited judicial review of arbitration decisions provided in the FAA.  The Court stated that "it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally."  *Id.* at 1404.  "Instead of fighting the text [of the FAA], it makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.  Any other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post-arbitration disputes."  *Id.* at 1405 (citations omitted).

### B.    Analysis

In light of *Hall Street*, Wood asserts that he "does not ask this Court to expand on the statutorily provided grounds" for vacating an arbitration award.  (Docket Entry No. 52 at 2). Wood moves to vacate the Award on the basis that "the arbitrators exceeded their powers" under the SPA by basing parts of the Award on clearly erroneous findings of fact.  Wood argues that because the SPA's arbitration clause stated that the arbitrators did not have the "power or authority . . . to render any decision that is based on clearly erroneously [sic] findings of fact," the Award must be vacated under § 4 of the FAA as exceeding the arbitrators' powers.  (Docket Entry No. 35 at 1–2).  PennTex responds that the *Hall Street* decision precludes this court from reviewing the Award for clearly erroneous findings of fact. PennTex also argues that even if this court were to review the Award under that standard, the factual findings are not clearly erroneous.  (Docket Entry Nos. 42, 51).

Wood's argument that the SPA arbitration clause requires or permits this court to vacate the Award because it was based on clearly erroneous factfindings fails, for several reasons.  The relevant part of the SPA arbitration clause stated:

> The arbitrators' decision will be considered as a final and binding resolution of the disagreement, will not be subject to appeal and may be entered as an Order in any court of competent jurisdiction in the United States; provided that this Agreement confers no power or authority upon the arbitrators to render any decision that is based on clearly erroneously findings of fact, that manifestly disregards the law, or exceeds of the powers of the arbitrator, and no such decision will be eligible for confirmation.

(Docket Entry No. 10, Ex. A at 35).

This arbitration provision is clearly an effort by the parties to contract for a different basis for judicial review and vacatur than the FAA provides.  This provision addresses the grounds on which the parties to the arbitration proceeding may challenge an award.  The provision states that the arbitrator's "decision will be considered as a final and binding resolution of the disagreement, will not be subject to appeal and may be entered as an Order in any court of competent jurisdiction in the United States" unless any of three specifically listed defects are present in the decision, in which case "no such decision will be eligible for confirmation." (*Id.*).  The arbitrator's decision is not "eligible for confirmation" if: (1) the decision is based on "clearly erroneously findings of fact"; (2) the decision "manifestly disregards the law"; or (3) the decision "exceeds the power of the arbitrator."  The three grounds for ineligibility for confirmation are stated disjunctively.  The provision lists an arbitrator's "render[ing] any decision that is based on clearly erroneously findings of fact" as a distinct ground from an arbitrator's "render[ing] any decision that . . . exceeds of the powers of the arbitrator." (*Id.*).  An arbitrator may issue an award based on erroneous factual findings yet still not exceed the authority provided by the arbitration agreement.  Although the provision states that the arbitrator has no "power or authority" to make erroneous findings of fact, in the context of the overall provision, it is clear that this phrase does not limit the arbitrator's power but rather refers to the circumstances under which the arbitrator's award will not be enforced by a court.

Even if this provision of the SPA arbitration clause is viewed as stating that an award based on erroneous factual findings would exceed the arbitrator's powers, as Wood contends,

this could not provide a basis for vacating an award on the basis of clearly erroneous factfindings. The *Hall Street* decision clearly limits parties' ability to set by contract the scope of judicial review and grounds for vacating an arbitration award.  The Court stated that the statutory bases for vacatur under the Federal Arbitration Act are exclusive, rejecting the argument that parties could provide for additional or different grounds for review and vacatur simply because arbitration is a creature of contract.  *See Hall Street*, 128 S. Ct. at 1404–05.

Wood argues that even after *Hall Street*, a court may review an award for clearly erroneous findings of fact, which is not a statutory ground for review, if the arbitration agreement states that the arbitrators lack power to base an award on such findings. Under the narrow reading of *Hall Street* Wood urges, parties could expand the statutory grounds for vacatur to include other errors or defects simply by defining an arbitrator's power as not including the power to make awards based on those errors or defects.  The reviewing court would then have to review the award to determine if it was based on any of those errors or defects and, if so, vacate the award.  Adopting Wood's reading of *Hall Street* would result in precisely the "full-bore legal and evidentiary appeals" that the Court held the FAA precluded.  *See Hall Street*, 128 S. Ct. at 1404–05.  This reading would impermissibly circumvent *Hall Street*.

Wood argues that interpreting *Hall Street* to preclude vacatur for clearly erroneous factfindings, even when the parties' contract provides that such findings are beyond the arbitrator's power, "eliminates any review of an arbitration award even when, as in this case, the arbitrators ignored the applicable literal contract text" and leaves a court "with the sole

14

option of rubber stamping every arbitration award." (Docket Entry No. 52 at 3). This argument ignores the fact that a court may vacate an arbitration award under any of the four statutory grounds. Wood does not assert that the Award was procured by corruption, fraud, or undue means; that there was evident partiality or corruption in the arbitrators; that the arbitrators were guilty of misconduct; or that the arbitrators so imperfectly executed their powers that a mutual, final, and definite award upon the subject matter submitted was not made, and there is nothing in the record suggesting such deficiencies. Wood does not assert that the arbitrators disregarded the law.[4]  His motion to vacate is based solely on his contention that the Award is based on erroneous factual findings. The FAA does not permit a court to vacate an arbitration award on this ground.

An arbitrator's factual findings "are unreviewable," *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 407 (5th Cir. 2007) , and "must be accepted as true," *id.* at 409 (citation omitted); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509–10 ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award. In discussing the courts' limited role in reviewing the merits of arbitration awards, we have stated that courts have no

---

[4] *Hall Street* overrules Fifth Circuit precedent establishing manifest disregard of clearly applicable law as an additional ground for vacatur distinct from the explicitly enumerated statutory grounds. *See Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 381 (5th Cir. 2004) (discussing Fifth Circuit precedent prior to *Hall Street*). The Court left open the possibility that the manifest disregard standard may remain good law as a derivation of one, or several, of the enumerated statutory grounds. *Hall Street*, 128 S. Ct. at 1404. Wood does not assert that the arbitrators manifestly disregarded the law.

business weighing the merits of the grievance or considering whether there is equity in a particular claim.") (citations omitted); *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 357–58 (5th Cir. 2004) (same), and a court may vacate an award based on the arbitrators' construction of the underlying contract only in very limited circumstances.

Courts have interpreted section 10(a)(4) of the FAA to allow vacatur of an award that "does not draw its essence from the contract." *Am. Laser Vision, P.A. v. Laser Vision Institute, L.L.C.*, 487 F.3d 255, 259 (5th Cir. 2007). "The test is whether the award, however arrived at, is rationally inferable from the contract." *Id.* (footnote omitted); *see also Apache*, 480 F.3d at 404–05 (citations omitted). "In deciding what is rationally inferable from the underlying contract [a court is] guided by the usual state-law rules of contract interpretation." *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003) (citing *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 793 (5th Cir. 2002)). "[T]he award must, in some logical way, be derived from the wording or purpose of the contract." *Kergosien*, 390 F.3d at 353 (citing *Executone Info. Sys. v. Davis*, 26 F.3d 1314, 1324 (5th Cir. 1994)). In reviewing an award, a court is not limited to the panel's explanation of the award. *Executone*, 26 F.3d at 1325. A district court "looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." *Id.* (quoting *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n.3 (5th Cir. 1990)). In *American Laser Vision*, the Fifth Circuit concluded:

> We will not second-guess multiple, implicit findings and conclusions underpinning the award. We do not decide if the award was free from error. We decide only that it is not the kind

of extraordinary award that ineluctably leads to the conclusion that the arbitrator was "dispensing his own brand of industrial justice." There are advantages and disadvantages in contracting for private resolution of a dispute announced without explanation of reason. When a party does so and loses, federal courts cannot rewrite the contract and offer review the party contracted away.

487 F.3d at 260; *see also Apache*, 480 F.3d at 405 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598–99 (1960)) ("'[I]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.'").

Wood has not shown that the Award "does not draw its essence from the contract." The arbitrators made the factual finding that PennTex did not breach Section 9.4 by failing to pay all Wood's attorneys' fees. The arbitrators stated that no breach could have occurred before April 1, 2007; there was no material breach; and even if there was a breach after April 1, 2007, it could be cured. One party's breach does not excuse another party's performance unless that breach is material. *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 633 (Tex. 2008); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) (citations omitted). Whether a breach is material is for the trier of fact to determine. *See Pala v. Maxim*, No. 01-01-00618-CV, 2002 WL 188567, at *4 (Tex. App.–Houston [1 Dist.] 2002, no pet.) (citing *Hernandez*, 875 S.W.2d at 693 & n.2; *Briargrove Shopping Ctr. Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 331 (Tex. App.–Houston [1st Dist] 1982, no writ))

17

("Whether a breach is material . . . is an issue for the trier of fact."). The panel's holding that Wood was not excused from providing a release is not a basis for vacatur.

Nor does the panel's award of attorney's fees to PennTex provide a basis for vacatur. The panel awarded attorneys' fees under Article 11.6(a)(vii) of the SPA, which stated that the arbitrators could award "Damages," defined in Article I of the SPA as "all damages, losses (including any diminution in value), liabilities, payments, amounts paid in settlement, obligations, fines, penalties and other costs, (including reasonable and necessary fees and expenses of outside attorneys, accountants and other professional advisors and of expert witnesses and other costs of litigation in connection with any Action or threatened Action of any kind or nature whatsoever." (Docket Entry No. 10, Ex. A at 3; Docket Entry No. 29, Ex. I at 16). The arbitrators found that "Wood shall be responsible for and shall pay to [PennTex] the sum of $217,428 in attorneys' fees, the same having been incurred by [PennTex] in federal court litigation and in this arbitration relative to the enforcement against Respondent Wood of Wood's contractually-related release obligation (the same having been determined to have been reasonably and necessarily incurred and supported by documentation made a part of the record of this proceeding." (Docket Entry No. 29, Ex. I at 20–21). As noted, the arbitrators only awarded part of the fees PennTex sought, reducing them to amounts that were reasonable and necessary and were proportionate to the claims on which PennTex prevailed.

Wood challenges the fee award on the basis that these fees were incurred before June 2007. The arbitrators found that Wood was bound to dismiss or release his claims in the Tsar

case on that date, when he received complete settlement documents from PennTex and could determine that the release he had received in May 2006 was unconditional and irrevocable. Wood argues that "[i]t is not reasonable and necessary to incur attorney's fees to enforce an obligation before the date the obligation became enforceable." (Docket Entry No. 35 at 10).

The arbitration panel did not rule that Wood's release obligation was unenforceable before June 2007. The panel stated that Wood had to specifically perform the release obligation "as of" June 20, 2007, (Docket Entry No. 29, Ex. I at 13), and "became obligated" to provide the release "no later" than June 4, 2007, (*Id.*, Ex. I at 20). The parties vigorously disputed whether Wood was contractually obligated under the 2005 SPA to perform his release obligation as early as May 2, 2006, when he received the full and complete release executed by the Tsar parties. Wood refused to dismiss his claims against the Tsar parties in May 2006, resulting in the litigation and arbitration. The arbitration panel did not rule that PennTex had no basis for seeking to enforce the release obligation when Wood insisted that he had the right to pursue his claims in the Tsar case.

"Determinations of hours and rates [for calculating reasonable litigation expenses and attorneys' fees] are questions of fact," *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995)), and the arbitrators' determination of the hours reasonably and necessarily expended are therefore "unreviewable," *Apache*, 480 F.3d at 407, and "must be accepted as true," *id.* at 409 (citation omitted). The panel's determination of the fee amount that it determined was

reasonably and necessarily incurred by PennTex in seeking to enforce Wood's release obligation is not a basis for vacatur.

PennTex's motion to confirm is granted.  Wood's motion to vacate is denied.

## III.   PennTex's Request for the Inclusion of Certain Terms in the Order

PennTex asks this court to offset the fees granted to Wood against the fees granted to PennTex and sign a final judgment stating the net amount under the Award and allowing postjudgment interest on the net amount at the federal statutory rate.  Wood does not object to allowing postjudgment interest.  He does object to the proposed offset on the ground that this would require this court to modify the Award.  PennTex contends that offsetting mutual monetary awards is simply a ministerial task, not a substantive modification of the relief afforded by the Award.

Texas law governs the SPA.  Under Texas law, "[t]here is no doubt of the power of courts independent of statute to set off mutual judgments against each other." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995) (quoting *Simpson v. Huston*, 14 Tex. 476, 481 (1855)) (additional citations omitted).  "[S]etoff is an appropriate judicial response to the serious practical difficulties encountered when parties have mutual judgments . . . ."  *Id.* (citing *Simpson*, 14 Tex. at 481).  "The right to offset two final judgments is independent of the merits of either of the underlying judgments." *Id.* at 470.  (citing *Kelly Furniture, Carpet & Hardware v. Shelton*, 62 S.W. 794, 795 (Tex. Civ. App.1901, no writ)).  A court may offset mutual awards within a single judgment. *See Am. Network Leasing Corp. v. Corporate Funding Houston, Inc.*, No. 01-00-00789-CV, 2002 WL 31266230, at *14 (Tex.

App.–Houston [1 Dist.] Oct. 10, 2002, pet. dism'd).  Courts have held that offsetting

monetary awards made in the same arbitration proceeding does not amount to a substantive

modification provided that an offset is consistent with the award.  *See Atlantic Aviation, Inc.*

*v. EBM Group, Inc.*, 11 F.3d 1276, (5th Cir. 1994).[5]  In *National Risk Underwriters, Inc. v.*

*Occidental Fire & Cas. Co. of North Carolina*, 931 F.2d 1015, 1016 (4th Cir. 1991), the

district court confirmed an arbitration award, offset the amounts owed by the parties under

mutual awards, and entered a judgment in favor of one party for the net amount.  *Id.*  The

district court held that the arbitrators must have intended for the amounts owed to be offset

because the general rule was that offset is available where parties are mutual debtors and the

arbitrators did not express a clear intent not to offset the awards.  *Id.* at 1016–17.  One of the

parties appealed the district court's judgment on the grounds that the arbitrators did not

intend to offset the amounts owed, as evidenced by the fact that the arbitration panel entered

the awards separately, and that the offset modified the award.  The appeals court found that

"[w]hile an offset of arbitration awards might constitute a modification of the award in some

circumstances, we find that the district court did not err in offsetting these awards."  *Id.* at

1017.

Offsetting the $92,540.07 award to Wood for the fees he incurred in the Tsar case

against the $217,428.76 award to PennTex for the fees it incurred in the federal suit and

---

[5]  The Supreme Court implicitly overruled an unrelated holding in *Atlantic Aviation*, that "the FAA
governs judicial review of arbitration proceedings notwithstanding any choice-of-law provision or state law
to the contrary," in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).  *See Action
Industries, Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 341 n.10 (5th Cir. 2004).

arbitration does not modify the Award.  The panel conditioned Wood's obligation to return the $1 million letter of credit without drawing on it "upon PennTex's prior payment of Wood's attorneys' fees of $92,540.07."  (Docket Entry No. 29, Ex. I at 20).  That letter of credit has been returned to PennTex.   (Docket Entry No. 39 at 1).   The award is nonappealable.   On confirmation, both parties are entitled to payment.   Offsetting the amounts owed would not modify the Award.  The motion to include the offset provision is granted.

## IV.   PennTex's Motion for Sanctions

### A.   The Legal Standard

A district court has broad discretion in determining whether a sanction is warranted and what sanction is appropriate.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990).  The test for imposing Rule 11 sanctions is whether the attorney's conduct was objectively reasonable under the circumstances.  *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988).  Rule 11 sanctions are a coercive mechanism available to trial court judges to enforce ethical standards on attorneys appearing before them.  Sanctions are to be imposed with "restraint and discretion."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

Rule 11 generally requires an attorney to conduct a reasonable inquiry into the relevant law and facts before signing pleadings, written motions, or other documents, and it prescribes sanctions for violations of these obligations.  FED. R. CIV. P. 11.  Rule 11 "prohibits filings made with 'any improper purpose,' the offering of 'frivolous' arguments,

and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005). Rule 11(c)(2) requires that a party seeking sanctions must serve the Rule 11 motion on the opposing party and may not file the motion with the district court unless the offending filing is not withdrawn or corrected within 21 days after service. FED. R. CIV. P. 11(c)(2). PennTex complied with this safe-harbor notice requirement.

"Determinations under Rule 11 often involve 'fact-intensive, close calls.'" *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004 (8th Cir. 2006) (quoting *Cooter & Gell*, 496 U.S. at 404). To support a frivolousness finding, some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind. Rather, an individual "must, at the very least, be culpably careless to commit a violation." *Young*, 404 F.3d at 39. The rule "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." FED. R. CIV. P. 11 Committee Notes (1993 amendments); *see also Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) ("A good faith belief in the merits of a case is insufficient to avoid sanctions.").

### B.    Analysis

Wood's argument that the SPA sought to limit the arbitrators' power to make clearly erroneous findings of fact was not frivolous so as to merit sanctions under Rule 11. *Hall Street* was decided during the pendency of this case. *Hall Street* changed existing law. As a new Supreme Court case, it requires interpretation as applied to specific factual contexts.

Wood's argument for an extremely narrow interpretation of *Hall Street* was unpersuasive and found to be without merit, but was not frivolous as to warrant sanctions.

PennTex also asserts that Wood's argument for vacatur is frivolous because even under his proposed standard of review, he failed to point to any clear factual errors that would warrant vacatur.  Again, Wood's arguments were unpersuasive but not sanctionable.

PennTex's motion for sanctions is denied.

**VI.    Conclusion**

PennTex's motion to confirm the Corrected Commercial Award of Arbitrator is granted and Wood's motion to vacate the Award is denied.  PennTex's motion to offset the amounts owed is granted.  PennTex's motion for sanctions is denied.

Judgment is entered by separate order.

SIGNED on June 27, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge